UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KATHLEEN A. CLUESMAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 2:16-cv-00132-LJM-DKL ) |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration,[1] | ) ) ) ) ) |
| Defendant. | ) ) ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Kathleen Cluesman requests judicial review of the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration (the "Commissioner"), who denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d).

## I. BACKGROUND

### A. PROCEDURAL HISTORY

Cluesman applied for DIB on April 10, 2013. R. at 16. She first alleged disability beginning on October 9, 2011, but later amended the onset date to July 9, 2013. *Id.* On May 5, 2015, Cluesman, with counsel, presented for a hearing in front of an Administrative Law Judge ("ALJ"), in which she testified about her alleged disability. R.at 32-71. The ALJ denied Cluesman's claim, finding that she was not disabled at any point from the

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Nancy A. Berryhill for Carolyn W. Colvin as the named Defendant.

1

alleged onset date through the date of the ALJ's June 1, 2015 decision. R. at 16, 26. The Appeals Council denied Cluesman's request for review of the ALJ's decision, which renders it the Commissioner's final administrative decision for purposes of judicial review. 20 C.F.R. § 404.981.

## B. RELEVANT MEDICAL EVIDENCE

On March 27, 2013, Cluesman saw Dr. Chua, her primary care doctor, for the first time. R. at 250. Cluesman complained of headaches and arthritis in both ankles. *Id.* She also complained of pain in both hands and feet, as well as carpal tunnel syndrome in her right hand. *Id.* She reported that she was falling asleep while driving. *Id.* Upon exam, Cluesman had tenderness in her hands, feet, knees, and ankles with a positive Phelan's test (a test for carpal tunnel syndrome) and Tinel's sign (a test for irritated nerves) on the right, but an otherwise normal neurological exam. R. at 251. Dr. Chua diagnosed Cluesman with uncontrolled diabetes, benign hypertension, and ankle and knee pain. R. at 252. He ordered a blood test. R. at 252-59.

In May 2013, consulting physician Dr. Robert Burkle examined Cluesman. R. at 268-71. An EKG from that day suggested impaired left ventricle relaxation, but Cluesman's ventricle systolic function was normal. R. at 264-65. Upon exam, Cluesman's ankles were very tender to the touch, and she had reduced range of motion in several joints and some reduced strength in her hands, shoulder, hips, ankles, and knees. R. at 268-70. She also complained that she was unsteady and her feet hurt when she bent forward eighty degrees. R. at 270. But she could make a full fist, pick up small objects without difficulty, had normal reflexes, walked with a normal gait and no assistive

2

device, walked on her tiptoes and heels, and stood on one leg. R. at 270-71. She also had a negative straight-leg-raise test. R. at 271.

In June 2013, state agency reviewing physician Dr. Corcoran opined that Cluesman could perform sedentary work; never climb ladders, ropes, or scaffolds; and occasionally perform all other postural movements. R. at 74-76. The following month, Dr. Sands reviewed the medical evidence and affirmed the opinion as written. R. at 87.

On June 12, 2013, Cluesman saw Dr. Chua with complaints of feet, hand, ankle, and knee pain, and she reported that she was dropping things with her right hand. R. at 277. She had not gone to the emergency room or seen any other doctors. *Id.* Upon exam, Cluesman had tenderness in her hands, knees, ankles, and one part of her foot with positive Tinel's sign and Phalen's tests, but an otherwise normal exam. R. at 278.

On July 8, 2013, Dr. Chua completed a questionnaire, in which he opined that Cluesman could continuously lift or carry up to ten pounds but never lift or carry any more than this weight; could stand or walk for twenty minutes at a time for a total of one hour each; could sit for eight hours at one time without interruption but for six hours total in an eight hour work day; required a cane to walk; could walk forty feet without a cane; could never reach overhead or finger; could occasionally reach otherwise, handle, feel, or push/pull; could never use foot controls; could never perform any postural movements; could never work around most environmental conditions; and could not walk one block at a reasonable pace on uneven surfaces, travel without a companion, or sort, handle or use paper files. R. at 303-08.

One day later, on July 9, 2013, Cluesman saw Dr. Chua with complaints of pain and burning in both hands, difficulty closing her hands at times, and pain in her knees,

3

ankles, and feet. R. at 274. She reported that she was using a cane and always traveled with her husband, due to a reportedly unsteady gait. *Id.* Dr. Chua observed Cluesman had tenderness in her lower back, hands, knees, and ankles, with limited range of motion in her ankles. R. at 275. Dr. Chua diagnosed Cluesman with diabetes with neurology manifestation, benign hypertension, arthritis of the hand, and ankle, knee, and foot pain. R. at 276. He ordered multiple x-rays and prescribed Gabapentin (commonly prescribed for neuropathic pain) and Celebrex (a non-steroid anti-inflammatory). R. at 277.

In August 2013, Cluesman saw Dr. Chua and she was wearing a brace. R. at 348. Upon exam, she had tenderness and spasms in her lower back and tenderness in her ankles and feet. R. at 349. Dr. Chua prescribed Tizanidine (a muscle relaxant) in place of Flexeril. R. at 350.

Four months later, in November 2013, Cluesman reported that the Tizanidine helped with the pain. R. at 345. She reported still having back pain and wondered if a back brace would help. *Id.* Upon exam, Cluesman had tenderness in her lower back and ankles. R. at 346. Dr. Chua prescribed a back brace. R. at 297-98.

Five months later, in March 2014, Cluesman reported that she had arthritis achiness in both feet. R. at 302, 342. She also complained of lower back pain, right knee pain, and burning in both hands. R. at 342. Upon exam, she had tenderness in her lower back, knees, ankles, and feet. R. at 343.

The following month, in April 2014, Dr. Chua completed an Arthritis Medical Source Statement, in which he gave Cluesman a fair prognosis and identified the following symptoms: knee, ankle, foot, and hand pain; an ability to sit for about fifteen minutes before needing to stand or move; an ability to stand ten minutes at a time; and lower back

4

pain. R. at 210. Dr. Chua characterized Cluesman's pain as severe and sharp. *Id.* For objective signs, Dr. Chua noted that Cluesman had reduced range of motion in her ankles, tenderness at various points, and reduced grip strength in her hands. *Id.* He opined that Cluesman could walk one block without rest or pain; could sit for fifteen minutes at a time and stand for ten minutes at a time; with no indication as to how many hours total in a day Cluesman could sit or stand; required several unscheduled breaks for fifteen minutes at a time; needed to elevate her legs, with no indication as to how high; required a cane, could rarely climb stairs and otherwise never perform any postural activities; had significant hand limitations, with no indication as to what percentage of the workday Cluesman could use her hands, fingers, or arms; and would be absent about four days per month. R. at 310-14.

In May 2014, Cluesman first went to rheumatologist Dr. Davis' office, where she was examined by Nurse Practitioner Miler twice. R. at 363-71. On May 7, 2014, she was prescribed Naproxen (a non-steroid anti-inflammatory) and Cymbalta (an anti-depressant often prescribed for fibromyalgia), but by May 29, she still had not taken her previously prescribed medications. R. at 363-64, 370-71. Cluesman reported that she had not yet taken Cymbalta, due to insurance issues, and had not begun on Naproxen either. R. at 363-64. She reported that she was partially able to keep up with household chores. R. at 364. Upon exam, she had tenderness in her hands and feet, but had full range of motion in all joints. R. at 364-65. Nurse Miller diagnosed Cluesman with generalized osteoarthritis with persistent joint pain in her hands, feet, and ankles and indicated that Cluesman would improve with Naproxen and Cymbalta. R. at 365. She encouraged daily exercise. *Id.* She also gave Cluesman an injection in her right elbow. R. at 365-66.

In May 2014, an EMG test revealed that Cluesman had early or mild carpal tunnel syndrome in both wrists with no evidence of neuropathy or lumbar radiculopathy. R. at 330.

In June 2014, Cluesman reported continued pain in her hands, feet, and elbows. R. at 339-40. Dr. Chua prescribed a cane for arthritis. R. at 317. The following month, he signed Cluesman's application for a disability plate or parking placard. R. at 318-19.

On July 28, 2014, Cluesman returned to Dr. Davis' office. R. at 321. Among her problems were fibromyalgia, generalized osteoarthritis in multiple joints, paresthesia, back pain, psoriasis, and possible psoriatic arthritis. *Id.* Her medications included Tizanidine, aspirin, Naproxen, and Cymbalta. R. at 322.

Two months later, in September 2014, Cluesman complained to Dr. Chua of pain in her hands and ankles, but medication was helping. R. at 336. She reported that she received an injection in her right elbow. *Id.* Dr. Chua observed that Cluesman had tenderness in her lower back, hands, ankles, and feet, but an otherwise normal exam. R. at 337.

In October 2014, Cluesman saw Nurse Miller again. R. at 356. Cluesman complained of mild, intermittent aches in her hands and feet, worsened by cold weather. R. at 356-57. She felt that Cymbalta had helped greatly with her foot pain and that Naproxen had helped with her overall pain, with no side effects. R. at 357. Cluesman was not exercising much, but was able to keep up with most household chores. *Id.* Methotrexate (a/k/a Humira, used to treat rheumatoid arthritis) was added to Cluesman's medications. R. at 358. She had tenderness in her hands and ankles, but full range of motion in all joints. R. at 357-58. Nurse Miller indicated that Plaintiff's myalgia and

generalized osteoarthritis were fairly well controlled.  R. at 358.  Nurse Miller continued the same medications and encouraged increased exercise.  *Id.*

In December 2014, Cluesman reported to Dr. Chua that nothing was new and that her condition was the same.  R. at 333.  Her main complaints of pain were in her ankles, back, and right wrist.  *Id.*  Dr. Chua observed that Cluesman had tenderness in her lower back, ankles, and right wrist, but an otherwise normal exam.  R. at 334.  He diagnosed Cluesman with benign hypertension, diabetes mellitus, ankle pain, lower back pain, and carpal tunnel syndrome.  R. at 335.

Three months later, in March 2015, Cluesman returned to Dr. Davis' office for follow-up regarding fibromyalgia/psoriasis.  R. at 352.  She complained of constant, moderate pain in her hands, feet, and lower back.  *Id.*  She had recently been diagnosed with bone spurs in her feet.  R. at 352-53.  It was noted, "She also has orthotics, but is not wearing them."  R. at 353.  She reported that Naproxen did not help the pain and gave her intermittent nausea.  R. at 352.  Cymbalta helped without side effects.  R. at 353.  She felt her psoriasis was well controlled and she reported that she was "mostly able to keep up with household chores."  *Id.*  Upon exam by Nurse Miller, Cluesman had tenderness in her hands, but full range of motion in all joints.  *Id.*  She had mild tenderness in her lower back and feet.  *Id.*  Nurse Miller indicated that Cluesman's myalgia and back pain were somewhat worse with cold weather, increased Cluesman's Cymbalta, and discussed referral to podiatry, which Cluesman refused.  R. at 354.

## II. **STANDARD**

To be eligible for DIB [2] a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). To determine whether or not a claimant is disabled, the ALJ applies a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

I. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

II. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

III. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

IV. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

V. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, but then it shifts to the Commissioner at the fifth step. *See Young v. Sec'y of Health & Human Servs.*, 957 F.2d

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1505 *et seq.*

386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Craft*, 539 F.3d at 673; *Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1999). "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Craft*, 539 F.3d at 673 (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). In reviewing the ALJ's findings, the Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the ALJ. *Nelson*, 131 F.3d at 1234.

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). *See also*, *Craft*, 539 F.3d at 673. Further, "[a]n ALJ may not discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the [Court] to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). *See also*, *Craft*, 539 F.3d at 673 (stating that not all evidence needs to be mentioned, but the ALJ "must provide an 'accurate and logical bridge' between the evidence and the conclusion" (quoting *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004))). An ALJ's articulation of his analysis enables the Court to "assess the validity of the agency's ultimate findings

and afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673.

### III. <u>ANALYSIS</u>

Cluesman raises three issues for review. She contends that the ALJ did not give adequate consideration to the opinion of treating physician Dr. Chua. Cluesman also claims that the ALJ failed to make a proper Residual Functional Capacity ("RFC"). Finally, Cluesman argues that the ALJ improperly assessed her credibility.

### A. CONTROLLING WEIGHT

Cluesman first alleges that the ALJ failed to articulate his reasoning in not giving controlling weight to Cluesman's treating physician, Dr. Chua, pursuant to the factors set forth in 20 C.F.R. § 404.1527. In support, Cluesman simply outlines medical evidence and opinions from her treatment with Dr. Chua, which included more stringent physical limitations assigned to Cluesman. Dkt. 15 at 7-8. She then simply concludes that the ALJ "failed to consider these factors in determining whether or not Dr. Chua's opinion was entitled to controlling weight." *Id.* at 9. This conclusory statement fails to provide any analysis as to how the ALJ failed in its regard to assessing Dr. Chua's opinion.

Moreover, the ALJ did state numerous reasons for discounting Dr. Chua's opinion. The ALJ first noted that Cluesman's physical examinations since her alleged onset date of July 9, 2013, have been largely normal. R. at 22. He also found that Dr. Chua's opinions were "unduly influenced by [Cluesman's] subjective reporting of her limitations." *Id.* In support, he cited her record from April 30, 2014, wherein Dr. Chua states: "[Cluesman] can only sit about 15 minutes and then needs to move/stand. Can only stand 10 minutes at a time." *Id.*, citing R. at 310. The ALJ also noted that Cluesman received conservative treatment and did not suffer from physical distress. R. at 22. The ALJ further

10

observed that Cluesman had not received copious amounts of pain medications since the alleged onset date. *Id.* He further noted that Cluesman's daily activities did not depict a person with disabling systems. R. at 23. The ALJ also found Cluesman's own subjective descriptions of pain not entirely credible and highlighted that Dr. Chua's opinion mirrored Cluesman's personal complaints. R. at 21-23.

Cluesman further argues that the ALJ failed to account for the consistency between his findings between the first assessment and the one approximately one year later.[3] The ALJ, however, specifically cited to both the 2013 and 2014 assessments for his opinion that Dr. Chua tracked Cluesman's subjective complaints in his medical findings. R. at 22.

Finally, Cluesman contends that it would be "reasonable to expect" that Dr. Chua would incorporate more than Plaintiff's subjective reports when proffering his opinion. In asserting this claim, Cluesman asks the Court to reweigh the evidence, which is not appropriate. *See Powers v. Apfel*, 207 F.3d 431, 434-35 (7th Cir. 2000) (because the Commissioner is charged with weighing the evidence, resolving conflicts, and making findings of fact, courts may not decide facts anew, re-weigh the evidence, or substitute their own judgment).

## B. RESIDUAL FUNCTIONAL CAPACITY

Cluesman next alleges that the ALJ improperly assessed her RFC. Cluesman first takes issue with the ALJ's finding that arthritis and fibromyalgia were not serious impairments, although she failed to allege this in the original complaint. She argues that

---

[3] It is unclear as to which assessments Cluesman refers to, since she does not cite the record in her reply brief.

11

this determination seriously reduces the weight of Dr. Chua's reports and contributes to a less restrictive RFC. Cluesman fails to address, however, the ALJ's findings with respect to both of these impairments. The ALJ specifically articulated his findings on fibromyalgia and concluded that it did not satisfy the requirements set forth in SSR-12-2p. R. at 19. He further noted that Cluesman's arthritis had not significantly affected her ability to perform basic work activities. R. at 18-19.

Cluesman also argues that the ALJ's opinion of Cluesman's RFC directly contradicts with that of Dr. Chua, particularly with respect to use of the upper extremities. Dkt. 15 at 9-10. Cluesman claims that the ALJ's decision is "clearly wrong" and in support cites to medical evidence of Dr. Chua's more restrictive findings. *Id.* at 10. But the ALJ considered this evidence in his findings. *See* R. at 21-23. Once again, Cluesman asks this Court to reweigh the evidence in her favor, which is impermissible on appeal. *See Powers*, 207 F.3d at 434-45.

Something that neither party alludes to, however, is that the ALJ made his RFC finding without actually discussing how he arrived there. Specifically, in determining the RFC, the ALJ stated that he "considered, and placed great weight on, the expert opinions of the above-mentioned State agency physicians who reviewed this record." R. at 23. The ALJ then proceeds to discount – and only provide "some weight" to – the limitations set forth by Dr. Chua for Cluesman's exertional, manipulative, and postural limitations. *Id.* A review of the record, however, reveals that the ALJ never actually discussed the opinions of the State agency physicians nor why he afforded them such great weight (or for that matter why their opinion was more appropriate than that of Dr. Chua, *see infra* pt. A). An ALJ's RFC determination "need not contain a complete written evaluation of every

piece of evidence," but he must base his decision on the "relevant evidence in the record." *Murphy v. Colvin*, 759 F.3d 811, 817-818 (7th Cir. 2014). And while an "ALJ need only 'minimally articulate' his reasoning for the weight assigned to a physician's opinion," simply stating the amount of weight given and citing to the exhibits does not satisfy this low threshold. *Gully v. Colvin*, 593 Fed. Appx. 558, 563-64 (7th Cir. 2014). The ALJ fails to articulate any reason for affording the state physicians' opinions in determining Cluesman's RFC, much less discuss the state physicians' findings regarding her ability to work. This precludes the Court from assessing the validity off the ALJ's findings and does not "afford [the] claimant meaningful judicial review." *Craft*, 539 F.3d at 673; *see also Young*, 362 F.3d at 1002 (the ALJ must provide an "accurate and logical bridge" between the evidence and the conclusion). Thus, for the reasons set forth in this section, remand is proper.

### C. CREDIBILITY FINDING

Cluesman next alleges that the ALJ improperly assessed Cluesman's credibility. Cluesman first argues that the ALJ's remarks about her orthotic use and daily housework should not have been considered to compromise her credibility. She also points out the consistency of her medical complaints throughout her treatment to establish that she is more credible than the ALJ found.

Because an ALJ is in the best position to determine a claimant's truthfulness, a reviewing court "will not overturn an ALJ's credibility determination unless it is patently wrong." *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (internal quotations omitted). When assessing the credibility determination, the Court "merely examine[s] whether the ALJ's determination was reasoned and supported." *Elder v. Astrue*, 529 F.3d

408, 413 (7th Cir. 2008). Only when the determination lacks any explanation or support will it be considered patently wrong. *Id.* at 413-14.

The ALJ in this case considered Cluesman's treatment history in relation to the "consistency" of her allegations of pain. R. at 21-23. He also noted the lack of physical distress, conservative treatment, moderate amounts of pain medication, and the fact that most physical examinations were largely normal. R. at 21-22. Moreover, Cluesman fails to establish how the two remarks about her orthotics and daily chores render the credibility determination patently wrong; rather, the remarks were only a minor portion of the evidence considered to find Cluesman less than entirely credible. For these reasons, the ALJ's determination of Cluesman's credibility not was patently wrong.

## IV. **CONCLUSION**

Because the Court cannot trace the path of the ALJ's reasons for providing great weight to the state agency physicians' opinions or how this weight attributed to Cluesman's RFC determination, the Court **VACATES** the ALJ's decision denying disability benefits and **REMANDS** this matter for further proceedings consistent with this entry. The Court will enter judgment accordingly.

IT IS SO ORDERED this __27th__ day of January, 2017.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Thomas C. Newlin
FLESCHNER STARK TANOOS & NEWLIN
tom@fleschnerlaw.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

14